# Commonwealth v. Krause

*Patricia E. Coonahan,* for Commonwealth.
*Ari S. Moldovsky,* for defendant.

FURBER, *J.,* July 7, 2008—On December 10, 2004, we found David M. Krause guilty of unlawful contact or communication with a minor, corruption of minors, attempt to commit unlawful contact or communication with a minor, attempt to commit indecent assault, attempt to commit involuntary deviate sexual intercourse, attempt to commit statutory sexual assault and attempt to commit corruption of minors. This verdict followed a non-jury trial held on October 7, 2004. The evidence consisted of stipulated exhibits and the transcript of the suppression hearing held before the Honorable Kent H. Albright on November 14, 2003. Counsel presented oral argument at the time of trial, and provided copies of cases thereafter. The defendant, through his counsel, argued that the elements of the offenses had not been made out, and that the Commonwealth failed to negate the defense of renunciation beyond a reasonable doubt.

Defendant was 25 years old at the time of the offenses. The charges at 0965-03 arose from an internet investigation, in which detectives posed as a 13-year-old girl, using the screen name "Prettieyes07." Case no. 5239-03 involved a real 15-year-old female high school student we will call "Amber" in this opinion. In the Amber case defendant and Amber engaged in two episodes of "cybersex": Mr. Krause described explicitly the sexual activity in which the two were pretending to be engaged.

The cybersex with Amber was discovered on defendant's computer, which was obtained through a consen-

sual seizure after Mr. Krause was arrested in the Prettieyes case on January 17, 2003. That investigation began in April 2002 with an internet chat between an Abington Township detective and defendant, who was using the screen name DM99K. The following January, County Detective Katherine J. Hart took over the investigation and contacted DM99K as Prettieyes07. Over seven days Prettieyes and the defendant held lengthy chats in which Prettieyes stated her interest in meeting DM99K, dating, and, after he suggested it, learning sex from him.

These chats are recorded on exhibit "C-2". The defendant asks about Prettieyes' age, learns she is 13, and states he could get into trouble. (Exhibit "C-2", pp. 1-2.) Later she repeats her age, and defendant says she has to be at least 16. He continues to acknowledge her age of 13 and that she could get him in trouble. (Exhibit "C-2", pp. 4, 5, 6, 8, 10.)

Defendant was the first to suggest they meet. (Exhibit "C-2", p. 9.) The defendant then tries to get Prettieyes to describe what she wants him to teach her, but she only states she wants to learn what he wants to teach. In time, defendant describes the oral sex in which they will engage. (Exhibit "C-2", pp. 17-18.) Eventually they agree to get together on January 17, 2003 at the Plymouth Meeting Mall.[1] They planned for defendant to pick up Prettieyes at the movie theater in the mall, and then go to her house in Plymouth Meeting, when her mother would not be at home. She agrees to wear what he asks

---

1. Defendant lived in Abington, Montgomery County, which is near Pennsylvania Turnpike Exit 343. The Plymouth Meeting Mall is at Exit 333.

her to wear, a short skirt, top and "cute" bra and panties. (Exhibit "C-2", p. 26.) The day before the planned meeting they have this chat:

"Prettieyes07: im still a little scared

"DM99K: of?

"Prettieyes07: the firsttime

"DM99K: oh.

"DM99K: I will be gentle

"Prettieyes07: I know u will its just scary

"DM99K: well we don't have to do tht if you don't feel like it.

"Prettieyes07: as long as your gentle

"Prettieyes07: I knoqw u will be

"DM99K: I wil sweetheart.

"Prettieyes07: do i have 2 worry about gettin pregnant

"DM99K: ha. Nah.

"Prettieyes07: y not

"DM99K: because I'll use a condom silly.

"DM99K: And I do not plan on cumming inside of you.

"DM99K: Even with the condom on." (Exhibit "C-2", p. 28.)

On January 17, 2003 defendant arrived at the movie theater at the Plymouth Meeting Mall in the green BMW he described to Prettieyes. He stopped in the fire lane,

and looked into the theater. The police surrounded his car. When he was arrested he had two condoms in the inside breast pocket of his jacket. When questioned, he admitted chatting on-line with Prettieyes, and that the picture she sent to him would be on his laptop computer.

On March 29, 2005 we sentenced the defendant to not less than three and one-half and not more than seven years imprisonment on the charge of attempt to commit involuntary deviate sexual intercourse, and probation on the other charges. Defendant was directed to register under 42 Pa.C.S. §9793. On April 25, 2005 we modified the imprisonment to a term of not less than three nor more than six years.

The appeal filed by trial counsel was quashed by the Superior Court on August 19, 2005 as untimely filed. On June 29, 2006, on consideration of the stipulation of new defense counsel and the attorney for the Commonwealth, we granted defendant leave to file a post-trial motion within 10 days, and to file a direct appeal subsequently. The motion filed by new counsel on July 10, 2006 raised several issues that could be decided on the record, and ineffective assistance of counsel. We heard testimony and argument on the ineffective assistance claims on April 11, 2007, September 17, 2007 and February 1, 2008.

Defendant and trial counsel testified at those hearings. Defendant asserts in his statement of errors complained of on appeal, trial counsel was ineffective by: (1) advising defendant to waive his speedy trial rights and not moving for discharge, (2) surrendering computer pass-

words without permission or getting anything in return, (3) advising defendant to waive his preliminary hearing for no good reason, (4) advising and agreeing to a stipulated trial, especially where it meant stipulating to things like the condoms, (5) failure to pursue and argue entrapment, (6) failure to introduce character testimony or get a stipulation from the Commonwealth on defendant's behalf, and (7) advising defendant not to testify.[2]

The evidence established that trial counsel sought continuances, which, when subtracted from the time between arrest and commencement of trial, caused the case to be tried within 365 days of defendant's arrest. He requested those continuances while Judge Albright's decision on the suppression motion was under advisement, because he considered suppression to be the significant issue in the case: if the motion to suppress had been granted there would be no support for the charges in case no. 5239-03, and there would be considerably less evidence in case no. 0965-03.

Trial counsel recommended that Mr. Krause agree to a trial on stipulated evidence because the defense of renunciation could be predicated on one of the stipulated police reports, and he was concerned if the witness testified this factual basis could be changed by testimony. He was also afraid defendant's case would be harmed if he had to submit to cross-examination. For these reasons, and because he considered suppression to

---

2. This list appears after the phrase "For example": and, as to item (4) the statement recites that "more examples are detailed in defendant's post-sentencing testimony." We address only the items set forth in the statement, because those not listed in it are waived. Pa.R.A.P. 1925(b) (4); *Commonwealth v. Lemon,* 804 A.2d 34 (Pa. Super. 2002).

be the principal basis on which the case could be won by the defendant, counsel advised Mr. Krause to agree to the stipulated trial, not to testify on his own behalf and not to present character evidence. He informed Mr. Krause that the decision to testify or not to do so was his to make, both in private and on the record. (N.T. trial 10/7/04, p. 23; N.T. PCRA hearing 4/11/07, p. 59.)

The preliminary hearing was waived, and the computer passwords were handed over as a result of an agreement between defendant and the Commonwealth. The assistant district attorney offered a sentence of 11 to 23 months imprisonment if defendant would agree to waive that hearing and plead guilty. Trial counsel believed it would be unwise to accept this deal without discovery. Defendant had previously consented to the search of his home and computer.[3] That computer required three passwords to be accessed immediately, and defense counsel, with the consent of the defendant, agreed to provide those passwords in exchange for an agreement by the Commonwealth to hold its offer open until the completion of discovery.

Trial counsel did not argue the defense of entrapment, because he considered renunciation a defense he could support based on the stipulated evidence. Given the facts and the law he did not believe there was support for the entrapment defense. As we will discuss, he was correct.

By order of March 19, 2008 we denied defendant's motions for post-trial relief. Defendant filed an appeal

---

3. The validity and scope of that consent were determined by Judge Albright in his August 6, 2004 findings and conclusions, which we adopt.

to the Superior Court on April 17, 2008. On April 18, 2008 we directed defendant to file a statement of errors complained of on appeal. That statement was filed and served on May 6, 2008.

Defendant asserts the evidence was insufficient to establish the crimes charged (although his arguments addressed attempt only), and that it did establish the defenses of renunciation and entrapment. In the Prettieyes case, no. 0965-03, he was convicted of five counts of attempt.

Section 901 of the Crimes Code, 18 Pa.C.S. §901 provides:

"*Criminal attempt*

"(a) Definition of attempt.—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. . . .

"(c) Renunciation.—

"(1) In any prosecution for an attempt to commit a crime, it is a defense that under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

"(2) A renunciation is not 'voluntary and complete' within the meaning of this subsection if it is motivated in whole or part by:

"(i) a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal enterprise, or which render more difficult the accomplishment of the criminal purpose; or

"(ii) a decision to postpone the criminal conduct until another time or to transfer the criminal effort to another victim or another but similar objective."

We found defendant guilty of attempting to commit these offenses:

"18 Pa.C.S. §3123(a)(7):

"*Involuntary deviate sexual intercourse*

"(a) Offense defined.—A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant: . . .

"(7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

"18 Pa.C.S. §3122.1

"*Statutory sexual assault*

"Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

"18 Pa.C.S. §3126(a)(8):

"*Indecent assault*

"(a) Offense defined.—A person is guilty of indecent assault if the person has indecent contact with the com-

plaintant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: . . .

"(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

"18 Pa.C.S. §6301(a)(1)

*"Corruption of minors*

"(a) Offense defined.—

"(1) Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree. . . .

"18 Pa.C.S. §6318:

*"Unlawful contact with minor*

"(a) Offense defined.—A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

"(1) Any of the offenses enumerated in chapter 31 (relating to sexual offenses). . . ."

Defendant's arguments on the issues of sufficiency of the evidence, renunciation and entrapment are addressed only to the attempt offenses charged in the Prettieyes case. He does not challenge sufficiency in the Amber case, no. 05239-03, in which we found him guilty of unlawful conduct with a minor and corruption of minors, in violation of 18 Pa.C.S. §§6301 and 6318, quoted above.

Both defendant and the Commonwealth rely on *Commonwealth v. Zingarelli,* 839 A.2d 1064 (Pa. Super. 2003), *allocatur denied,* 579 Pa. 692, 856 A.2d 834 (2004) with regard to sufficiency of the evidence and renunciation. Mr. Zingarelli made a date with a state trooper posing as a 15-year-old girl looking for a man to teach her oral sex he met in a "father and daughter sex" chat room. They discussed a location and time to meet, and arranged to do so at an ice cream stand, where defendant was arrested. Mr. Krause argues that the steps taken to carry out his intent were insufficient to convict him because they were lesser in degree than those in *Zingarelli,* specifically that he did not pack an overnight bag, did not book a hotel room, did not buy a bottle of wine, and did not have an unopened box of condoms, just the two in his pocket, which any young man might carry. The Commonwealth argues the differences are merely due to the situation: defendant was going to Prettieyes' home, and did not have to stay overnight because of the shorter distance.

*Zingarelli* does not set a minimum standard of what constitutes an attempt to commit a sexual offense against

a minor as a result of an internet arrangement. The court ruled that when considering the sufficiency of the evidence it will view all the evidence at trial in the light most favorable to the verdict winner to determine if there was sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. The Commonwealth need not preclude all possibility of innocence, and doubts may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. 839 A.2d at 1069.

Defendant's intent to commit the crimes is established beyond a reasonable doubt by the internet chats. We found beyond a reasonable doubt that those chats, the arrangement to meet Prettieyes, defendant's drive of more than 10 miles and his arrival at the agreed-upon location are, each, substantial steps toward the commission of each crime attempted.

In *Commonwealth v. Jacob,* 867 A.2d 614 (Pa. Super. 2005) the Superior Court affirmed the sentence imposed by a judge of this court in a similar case. It held that multiple sexually explicit conversations with a purported 12-year-old girl, a plan to meet her, an offer (there by telephone) to teach the girl oral sex, and arrival at the agreed-upon location with condoms were sufficient evidence to convict the defendant of the attempt to commit involuntary deviate sexual intercourse with a minor. The Superior Court held the slight differences of fact in *Zingarelli* were not significant: the shorter drive, the lack of an overnight bag and the failure to rent a hotel room were

consequences of the shorter distance involved and the plan to use defendant's home.

*Commonwealth v. Zingarelli,* 839 A.2d 1064 (Pa. Super. 2003) also supports our decision that the Commonwealth negated the defense of renunciation beyond a reasonable doubt. The defense is statutory, and the statute places the burden on the Commonwealth. 18 Pa.C.S. §901(c). We found the defendant did stop and wave at someone in the theater, but even if we agreed with his interpretation of the evidence, that he only stopped when the police blocked his car, he did not try to drive away "under circumstances manifesting a voluntary and complete renunciation of his criminal intent."

In *Commonwealth v. Joseph,* 848 A.2d 934, 941 (Pa. Super. 2004) the Superior Court held it was not error to refuse to instruct the jury on renunciation under the circumstances. The court stated it was difficult to understand how the defendant was entitled to a renunciation instruction when he appeared at a parking lot on the date and time agreed, and reiterated his request to have sex with a 12-year-old.

Defendant asserts the defense of entrapment is established on this record. This is also a statutory defense, but, unlike renunciation, the burden of proof is on the defendant. 18 Pa.C.S. §313 provides:

"*Entrapment*

"(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or

encourages another person to engage in conduct constituting such offense by either:

"(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

"(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

"(b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. . . ."

There is no evidence to suggest the police made knowingly false representations designed to induce the belief defendant's conduct was not prohibited. On several occasions during the chats Mr. Krause stated he knew a sexual relationship between the two could get him in trouble, and the police never said anything to the contrary. There is no support in the evidence for the proposition that defendant was not ready to commit the offenses charged. He proposed the meeting. He described the oral sex he would perform. He proposed sexual relations, and told Prettieyes what he intended they would do.

Defendant concludes the relevant paragraph of his statement of errors complained of by stating: "This is especially true when applying the statutes in effect at the time of defendant's arrest were not the same as the statutes as later amended after his January 17, 2003 arrest."

This argument was not presented, and we do not understand the point. No specific amendment was identified, so the issue is not preserved. *Commonwealth v. Lemon,* 804 A.2d 34 (Pa. Super. 2002); *Commonwealth v. Dowling,* 778 A.2d 683 (Pa. Super. 2001).

*Commonwealth v. Zingarelli,* 839 A.2d 1064 (Pa. Super. 2003) also rejects the defense of entrapment under similar circumstances. Although there the police entered the chat room and waited to be approached and the detectives initiated chats with Mr. Krause after a long period in which there was no contact, that is not a meaningful distinction given the statute and its purpose. As stated in *Zingarelli,* the defense of entrapment is a sanction for overzealous and reprehensible police conduct. See also, *Commonwealth v. Johnson,* 448 Pa. Super. 42, 670 A.2d 666 (1996) in which the court held that providing the opportunity for a person with the intent to commit a crime to do so is not entrapment.

There was nothing overzealous nor reprehensible about the police conduct in this case. David Krause had the intent to have sexual intercourse and oral sex with a 13-year-old girl. He engaged in multiple internet conversations with a person he believed to be one. He explained exactly what he intended to do with her. He traveled to the designated place at the designated time. That a police officer prevented Mr. Krause from meeting a real child by pretending to be one is neither outrageous nor reprehensible. It is good and fair law enforcement that protects children.

Next, we address the arguments asserting Pa.R.Crim.P. 600 was violated. Defendant was arrested in the first case

on January 17, 2003. His trial commenced on October 7, 2004, 629 days later. He filed his motion to suppress evidence on October 17, 2003. Judge Albright entered his decision on August 6, 2004, 294 days after the motion was filed. Subtracting that period, trial commenced on the 335th day, within the 365 days allowed by Rule 600, subsection (C) of which provides:

"(C) In determining the period for commencement of trial, there shall be excluded therefrom: . . .

"(3) such period of delay at any stage of the proceedings as results from:

"(a) the unavailability of the defendant or the defendant's attorney;

"(b) any continuance granted at the request of the defendant or the defendant's attorney."

The parties were to submit proposed findings and conclusions 30 days from transcription of the notes of testimony, that is, on January 12, 2004. On January 9, 2004, this period was extended at the request of counsel for defendant. The Commonwealth filed a brief on February 8, 2004, and on March 12, 2004 the defendant filed proposed findings and conclusions. The Commonwealth filed proposed findings and conclusions on April 12, 2008. (Judge Albright's order, findings of fact and conclusions of law of August 6, 2004, ¶¶35-39, p. 8.) Each time the case was re-listed for trial the defense requested a continuance.

Time required to decide a defense pretrial motion is excluded from Rule 600. *Commonwealth v. Cook,* 544 Pa. 361, 676 A.2d 639 (1996), *cert. denied,* 519 U.S.

1119 (1997); *Commonwealth v. Williams,* 726 A.2d 389, 392 (Pa. Super. 1999), *allocatur denied,* 560 Pa. 745, 747 A.2d 368 (1999). Continuances granted at the request of the defense are excluded. Pa.R.Crim.P. 600(C)(3)(b); *Commonwealth v. Cook,* 865 A.2d 869 (Pa. Super. 2004), *allocatur denied,* 584 Pa. 672, 880 A.2d 1236 (2005). Therefore, there was no violation of Pa.R.C.P. 600.

Defendant challenges the rulings on pretrial motions made by the Honorable Kent H. Albright. We agree with Judge Albright's decision and reasoning, as set forth in his order, findings of fact and conclusions of law of August 6, 2004. We need not address those issues in this opinion, since the reasons are already of record. Pa.R.A.P. 1925(a).

Defendant asserts trial counsel was ineffective for several reasons. To prevail, he must demonstrate that (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Uderra,* 550 Pa. 389, 706 A.2d 334 (1998), *cert. denied,* 526 U.S. 492 (1999).

First, defendant asserts trial counsel was ineffective by advising defendant to waive his speedy trial rights and not moving for discharge. As discussed, this claim is not of arguable merit. Trial counsel explained that he sought continuances because he considered suppression the best "defense", and that it was not in defendant's interest to seek to go to trial before Judge Albright ruled. Since an order suppressing evidence would have resulted in dismissal of the charges involving Amber, the

continuance requests were designed to effectuate defendant's interest.

Defendant claims it was ineffective for trial counsel to surrender computer passwords and waive the preliminary hearing without permission, for no good reason and without getting anything in return. We find the testimony of trial counsel credible, and defendant not credible. The preliminary hearing was waived, and the passwords surrendered, to get the Commonwealth to keep open its offer of an 11 to 23 month sentence. He also explained that there is no such thing as a password that cannot be cracked eventually, and that once he saw the discovery he considered it best to give up the offer and file a motion to suppress. The waiver of the hearing and surrender of the passwords were designed to effectuate defendant's interests.

Defendant asserts trial counsel was ineffective by advising and agreeing to a stipulated trial, because it meant stipulating to "things like the condoms and other facts that could have been contested (more examples are detailed in defendant's post-sentencing testimony)." We address only the example stated, and will not search the record for others. Issues not listed in the statement of errors complained of are waived. Pa.R.A.P. 1925(b)(4); *Commonwealth v. Lemon,* 804 A.2d 34 (Pa. Super. 2002).

Trial counsel explained that, after discussion with the defendant, he agreed to a stipulated trial for several reasons: there was a factual basis for the defense of renunciation in one of the police reports, and he did not want this explained away by testimony. He believed the strong-

est defense was the suppression of evidence, and that a stipulated trial would preserve those issues, and perhaps result in a more lenient sentence. He was concerned that defendant's testimony would expose him to cross-examination that could harm his case. As far as the condoms were concerned, these were seized from defendant's person when he was arrested and he does not explain why they would be inadmissible. Counsel articulated a reasonable basis why a stipulated trial would effectuate defendant's interest.

Next, defendant asserts trial counsel was ineffective by failing to pursue and argue entrapment. As discussed above, the police conduct is the subject of incontestable recorded internet chats. Under the law, there was no basis for an entrapment defense. Trial counsel also explained because the defense was so difficult to establish under the facts and the law, asserting it would have detracted from the defense of renunciation, which could be supported on the record.

Defendant claims trial counsel was ineffective by failing to introduce character testimony or get a stipulation from the Commonwealth on defendant's behalf. Defendant offered one character witness at sentencing who testified he was hard working and a decent, honest, ethical person. No one else was identified. To establish ineffective assistance on this basis, defendant must prove the existence and availability of the witnesses, counsel's duty to know of the witness, the witness' willingness to appear on his behalf, and the necessity for the proposed testimony to avoid prejudice. *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 254 (1998), *cert. denied,* 528 U.S. 880 (1999).

He has not done this except for the single witness, whose testimony would not have changed our view of defendant's criminal intent, which was based on the recorded internet chats. Trial counsel explained he did not believe character testimony would have changed the result. Defendant did not establish the Commonwealth would have stipulated to his good character if asked.

Defendant asserts trial counsel was ineffective by advising him not to testify. The advice was designed to effectuate defendant's interests, because testimony would have prevented the strategy of proceeding on stipulated facts. Counsel was also concerned that cross-examination of the defendant would have harmed him. Defendant was fully advised of this right to testify and to refuse to testify, both in private and on the record.

Finally, defendant asserts the verdict was against the weight of the evidence due to the "pervasive contradictions in the evidence and the evidence of entrapment and renunciation." A verdict is against the weight of the evidence only when it is so contrary to the evidence as to shock one's sense of justice. This is addressed primarily to our discretion, and will be reviewed only for abuse. *Commonwealth v. Blakeney*, 946 A.2d 645 (Pa. 2008). Although no contradictions are pointed out, those we recall were minimal and, at worst, were the results of differences in recollection recorded in police reports made after the fact. Our verdict does not shock our sense of justice. It was based on recorded internet chats with children, including two instances of cybersex with one child, and defendant's steps toward having sexual relations with a child he believed was 13 years old.